1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11

PRESTON GRISBY,

12
  Plaintiff

13
  v.

14
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

15
  Defendant.

16
17

Case No. CV 14-7201 (KLS)

**MEMORANDUM OPINION AND ORDER**

18          On September 18, 2014, Plaintiff, Preston Grisby ("Plaintiff"), filed a

19    Complaint seeking judicial review of a denial of his application for Supplemental

20    Security Income ("SSI" or "benefits".)  (Complaint, ECF No. 3.)  On August 19,

21    2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the

22    undersigned United States Magistrate Judge.  (Consents, ECF Nos. 25, 26.)   On

23    August 5, 2015, the parties filed a Joint Stipulation, whereby Plaintiff seeks an order

24    reversing the Commissioner's decision and awarding benefits or, in the alternative,

25    remanding the matter for further administrative proceedings; and Defendant seeks

26    an order affirming the Commissioner's decision or, in the alternative, remanding the

27    matter for further administrative proceedings.  (Joint Stip., ECF No. 22).  The Court

28    has taken the Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 27, 2003, Plaintiff filed an application for SSI, alleging an inability to work since January 1, 2001 (subsequently amended to March 17, 2004) due to mental illness, hearing voices, depression, and anxiety.  (Administrative Record ("A.R.") 17, 86, 109, 387.)  Plaintiff has no past relevant work experience. (A.R. 391.)

Plaintiff's claim was denied initially, upon reconsideration, and, following a hearing by Administrative Law Judge Eric V. Benham ("ALJ Benham"), in a written decision dated November 17, 2006.  (A.R. 17, 39-46.)  On November 27, 2006, Plaintiff filed a request for review of ALJ Benham's decision (A.R. 60), and on May 30, 2008, the Appeals Council reversed and remanded for further administrative proceedings[1] (A.R. 63-65).

On July 7, 2009, a remand hearing was held before Administrative Law Judge Robert S. Eisman ("ALJ").  (A.R. 17.)  The record at the time included an RFC assessment dated June 15, 2004 completed by state agency psychiatrist, Dr. Stone, M.D. who reviewed Plaintiff's medical records but did not conduct an examination. (A.R. 215-17.)  The record also included a psychological evaluation and a medical source statement prepared by consultative psychologist Dr. Brawer, Ph.D. who examined Plaintiff on June 28, 2006.  (A.R. 256-64.) Neither doctor assessed a "marked" degree of limitations in Plaintiff's social functioning and consequently assessed that he would be able to work.[2]  After considering additional evidence,

---

[1] The Appeals Council's remand order directed ALJ Benham to "[f]urther assess the claimant's work activity to determine whether work done in the last 15 years is relevant 'work experience[,]' if it lasted long enough to be learned[,] and if it met the threshold level of substantial gainful activity, providing requisite rationale for the conclusion reached."  (A.R. 65.)

[2] In 2006, Dr. Brawer assessed only mild limitations in Plaintiff's ability to sustain cooperative relationships with co-

which included treatment notes from the office of Plaintiff's treating physicians, Dr. Ouano, M.D. and Dr. Jacobs (who treated Plaintiff in 2010-11), but no additional assessments post-dating those of Drs. Stone and Brawer, on July 24, 2009, the ALJ issued an unfavorable decision. (A.R. 17-26; 387.) On June 22, 2011, the Appeals Council denied Plaintiff's request for review of that decision. (A.R. 5-8.)

Plaintiff then filed a civil action (Case No. CV 11-06355-MAN) seeking judicial review of the Commissioner's decision to deny benefits.   (A.R. 387.) Reviewing the sole issue raised, this Court found that the "ALJ wholly failed to consider whether plaintiff equals Listing 12.05C . . . .   If the ALJ believed that plaintiff did not equal Listing 12.05C, the ALJ was required to explain why, and his failure to do so constitutes reversible error."   (A.R. 451 citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)).   On July 24, 2012, this Court held that "outstanding issues must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find [Plaintiff] disabled if all the evidence were properly evaluated," and remanded the matter for the ALJ to consider whether Plaintiff equals Listing 12.05C and if he finds that Plaintiff did not, to "adequately explain his reasoning."   (A.R. 454.)

On November 5, 2013, a second remand hearing was held, again before the same ALJ.   (A.R. 761-99.) At this time the record was expanded to include Plaintiff's medical treatment notes prepared by his treating psychiatrist, Dr. Ouano, after the ALJ's adverse decision in 2009.   Dr. Ouano diagnosed Plaintiff with bipolar disorder and schizoaffective disorder. (A.R. 753.)   The RFC assessments by

---

workers and supervisors.  Similarly, Dr. Stone's functional capacity assessment stated that "Claimant is capable of appropriate interaction and relationships with others" – and also that "Claimant is capable of understanding, remembering, and completing simple tasks.  Claimant is capable of focused attention and sustained concentration for 8 hours a day on a regular basis." (A.R. 217.)  The ALJ relied on these assessments after finding that they were more consistent with the overall record than the subsequent medical opinions by Dr. Ouano and Dr. Akins.  (AR 215-13, 256-61, 399.)

Drs. Stone and Brawer remained the only such assessments by medical professionals in the record.

At the second remand hearing, Plaintiff was represented by counsel.  (A.R. 761-99.) At that hearing, Dr. Akins testified as an impartial non-examining medical expert who had reviewed Plaintiff's entire medical file, that Plaintiff suffered marked limitations in social functioning that precluded him from working.  (A.R. 780.)  Dr. Akins stated that "perhaps technically the [L]isting is not equaled based strictly on the underlying treatment data but I believe that there would be eligibility if we do a functional capacity assessment."  (A.R. 778.)  Dr. Akins testified that "knowing that there are inconsistencies in the record and that sometimes a full clinical picture isn't always evident from the treatment records[,] [i]n my humble opinion that is the case here and that the totality of information across more than 10 years is persuasive to me that this is not an individual who is likely to be able to be gainfully employed or to deal with every day common stress in work environments."  (A.R. 778.)

A vocational expert ("VE") testified that an individual of Plaintiff's age,[3] education, work experience, hypothetically suffering from marked limitations in ability to maintain a work schedule, attendance and handle ordinary routines of daily work could not perform any work.  (A.R. 652-53; 796. 401.)  The VE also testified that if the hypothetical involved only certain mild and moderate limitations the individual could perform the work of laundry worker, janitor and kitchen helper, which exist in significant numbers in the national economy.  (*Id*.)

---

[3] Plaintiff was born on October 19, 1955 and will soon be sixty years old.  (A.R. 513.)

4

On June 23, 2014, the ALJ denied Plaintiff's claim for benefits. (A.R. 384-402.)  After the ALJ's decision became final, Plaintiff timely filed his complaint in this action on September 18, 2014.[4]  (A.R. 385.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ determined that "changed circumstances" existed (in the form of "evidence of additional 'severe' mental impairments, *i.e.*, a bipolar disorder and a schizoaffective disorder, and an absence of any documented physical impairments since the amended disability onset date"), which rebutted the continuing presumption of non-disability from the prior unfavorable decisions.  (A.R. 391, 388 (citing *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).)  The ALJ then utilized the five-step sequential evaluation process to determine whether Plaintiff was disabled. 20 C.F.R. § 416.920.

At the first step, the ALJ agreed that Plaintiff had not engaged in any substantial gainful activity since March 17, 2004, the date of the filing of the SSI application.  (A.R. 391.)  At step two, the ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of bipolar disorder II, schizoaffective disorder, and borderline intellectual functioning.[5]  (A.R. 391.)

At step three, the ALJ noted that Plaintiff's IQ score was not sufficiently low to support a finding of borderline intellectual functioning or mental retardation and thus Plaintiff did not "meet" the Listings of 12.05 or 12.04.  (A.R. 391-92.) However, analyzing the evidence under the medical equivalency theory, as directed

---

[4] The scope of the 2013 remand proceedings before the ALJ was limited to whether Plaintiff satisfied the Listings based on a medical equivalence theory despite his IQ which exceeded the criteria. (A.R. 449.)

[5] Bipolar disorder II and schizoaffective disorder are evaluated under Listings 12.04 and borderline intellectual functioning or mental retardation is evaluated under Listing 12.05. (A.R. 391.)

by this Court's remand order, the ALJ found that Plaintiff's impairment also did not "equal" any listed impairment, because they were not significant enough to satisfy the equivalency criteria for Listing 12.05C. (*Id*. citing 20 C.F.R., Part 404, Subpart P, Appendix 1).

The ALJ stated that, to satisfy the Listing criteria, Plaintiff's "mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration," where "marked" meant more than moderate but less than extreme. (A.R. 395.) The ALJ also noted that in order to find that Plaintiff's impairments were severe enough to satisfy the equivalency criteria under Listing 12.05C, there must be evidence of "medical findings 'equal in severity to *all* the criteria' of an argued listing when alleging equivalent impairments." (A.R. 392 (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); 20 C.F.R. 416.926 (a)) (emphasis in original). The ALJ further specified that general arguments (that the severity of additional impairments compensated for failure to meet the IQ criteria) would not suffice, and to be successful requires a showing that IQ is adversely impacted by an additional impairment. (*Id*. citing *Kennedy v. Colvin*, 738 F.3d 1172, 1177 (9th Cir. 2013).

The ALJ disregarded the testimony of medical expert Dr. Akins (who testified that the combination of Plaintiff's borderline intellectual functioning and bipolar disorder with psychotic features equaled the severity of Listing 12.04) because the ALJ found Dr. Akins "failed to articulate how the specific part A criteria of this [L]isting was equaled related to [Plaintiff's] impairments," and because his opinion in regards to part B criteria, that plaintiff "had marked social functioning limitations

and concentration, persistence and pace restrictions equaling this [L]isting" was not supported by the overall record.  (A.R. 393-94.)

In rejecting Dr. Akins' opinion as to the part B criteria, the ALJ cited the following record evidence that suggested greater social functioning capability: (1) a July 2013 assessment by Dr. Ouano in which schizoaffective disorder was diagnosed but contained a related mental evaluation that allegedly reflected cooperative interactions with family members and a girlfriend; and (2) Plaintiff's report of increased symptoms following the death of a friend.  (A.R. 394.)   The ALJ also disregarded the opinion of treating physician, Dr. Ouano because "the treating source assessment is not consistent with treatment visit records."  (A.R. 394.)   The ALJ noted "[w]hile treatment records show some waxing and waning of symptoms, they also show periods of medication non-compliance…exacerbating symptoms." (A.R. 395.)   Based on the overall record, including his most recent medical records from July 2013, the ALJ noted that there were "multiple instances of unremarkable mental status examinations and periods when [Plaintiff] was reportedly feeling and doing well."   (A.R. 395.)   Accordingly, the ALJ held that "the severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04 and 12.05."  (A.R. 395.)

At step four, the ALJ rejected Dr. Akins' and Dr. Ouano's assessments of marked limitations in social interactions, and chose to rely on the opinions of Dr. Brawer and Dr. Stone, finding these opinions to be more consistent with the overall record despite the fact that these were older assessments.  (A.R. 215-33, 260-63, 399.)  As a result, the ALJ assessed Plaintiff's residual functional capacity ("RFC") for work with the following limitations:

Plaintiff could stand/walk for up to 6 hours in an 8-hour workday with normal breaks; could sit unrestricted; could perform work that does not require concentrated or more than frequent exposure to hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions; could perform work that is limited to the performance of simple, routine, and repetitive tasks, *i.e.*, where the complexity of tasks is learned and performed by rote with few variables and little judgment; could work in a job that does not require interaction with the general public and co-workers, *i.e.*, other than brief or superficial contact that is incidental to the work performed; could work in an environment that would not require directing, controlling, or planning the activities of others; could not work in an environment requiring making more than rudimentary or basic work-related judgments and decisions; could not be required to influence other people; could not perform work requiring more than occasional changes in work setting; must work in an environment requiring specific instructions; and could work in a low stress environment, which is defined as work that does not require a production line pace or involve work that would be dangerous to one's self or others.

(A.R. 397.)

Based on these findings, the ALJ found that Plaintiff "has not been under a disability within the meaning of the Social Security Act since March 17, 2004." (A.R. 389.)  Plaintiff now challenges the ALJ's RFC determination and rejection of the opinions of Dr. Akins and Dr. Ouano.[6]

---

[6] Aside from questioning the ALJ's consideration of conflicting medical opinions, the instant lawsuit does not appear to challenge the ALJ's summation of the Ninth Circuit's interpretation of the legal requirements in *Sullivan* or *Kennedy*.  (A.R. 391-92).)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, [reviewing courts] uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The Court will also not reverse the Commissioner's decision "[w]here evidence is susceptible to more than one rational interpretation," even if it were to disagree with the ALJ's conclusions. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the ALJ has properly considered all of the limitations for which there is record support, the ALJ's RFC determination will not be overturned so long as the ALJ applied the correct legal standard and the RFC assessment is supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Although this Court cannot substitute its discretion for that of the ALJ, it must nonetheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). However, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006).)

Courts must "remand for further proceedings when…an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140-42 (9th Cir. 2014).

## DISCUSSION

Plaintiff challenges the ALJ's decision on the basis that: (1) the RFC determination was not supported by sufficient evidence (i.e. that the opinions of Drs. Brawer and Stone did not constitute sufficient evidence); and (2) the ALJ improperly disregarded the opinions of Drs. Akins and Ouano. (Joint Stip. 5.)

Plaintiff contends that the ALJ's choice to rely on the opinions of Drs. Brawer and Stone over those of Drs. Akins and Ouano constitutes legal error.[7] State agency

---

[7] Plaintiff argues, tangentially, that the ALJ could not properly rely on Drs. Brawer and Stone because he assessed "moderate" rather than "mild" limitations on Plaintiff as those doctors had. (Joint Stip. 7-8). This argument is unpersuasive because an ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts. *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence). Moreover, even if the ALJ erred in relying on Drs. Brawer and Stone's opinion only in part, the error was harmless because Plaintiff would have been entitled to benefits only if he suffered from "marked" limitations and both assessments of "mild" or "moderate" would fall short. (A.R. 395.) *Robbins*, 466 F.3d at 885 (9th Cir. 2006) (The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the

psychiatrist, Dr. Stone, M.D. reviewed Plaintiff's medical records—which included treatment notes from the office of Plaintiff's sole treating psychiatrist, Dr. Ouano, M.D.—and completed an RFC assessment on June 15, 2004. (A.R. 215-17.) Dr. Brawer, Ph.D., a consultative psychologist, examined Plaintiff on June 28, 2006, and prepared a psychological evaluation and a medical source statement on Plaintiff's ability to do work-related activities. (A.R. 256-64.) Neither of these doctors assessed the "marked" degree of limitations in any of the four functional areas to satisfy the equivalency criteria (found in paragraph B of listings 12.02-12.04, 12.06-12.08 and paragraph D of 12.05) of the relevant listings. (A.R. 229, 260.) In 2012, Dr. Ouano, in contrast to Drs. Brawer and Stone, opined that Plaintiff suffered from "marked" limitations in his ability to "interact appropriately with the public," "interact appropriately with supervisors," "interact appropriately with co-workers," and "respond appropriately to change in a routine work setting." (A.R. 653.) Dr. Ouano further opined that Plaintiff had "extreme" limitations in his "ability to respond appropriately to work pressures in a usual work setting." (*Id*.)

### A. The ALJ erred by disregarding the opinions of Drs. Ouano and Akins

The ALJ rejected the opinion of Dr. Ouano whose treatment notes and medical source opinion were the most recent additions to Plaintiff's medical record:

> The claimant submitted additional treatment evidence that was not considered by the undersigned at the time of the 2009 decision. As stated, the additional treatment evidence reflects the reemergence of psychotic symptoms beginning in June 2010 after an absence of almost 6 years. As noted, prior to June 2010, the last report of auditory hallucinations was in December 2004 . . . The undersigned remarks on the strangely coincidental re-

ultimate nondisability determination.'") (quoting *Stout*, 454 F.3d at 1055).

emergence of psychotic symptoms in 2010 after the 2009 ALJ denial decision.  Notwithstanding, a review of the additional [ ] treatment records continue to fail to support the mental disability alleged by the claimant.  As noted previously, the re-emergence of auditory hallucinations in June 2010 coincides with the report of medication non-compliance.

(A.R. 398 (internal citations omitted); *see also id.* 783-84.)

The opinions of a treating physician should generally be given controlling weight.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1997).  "When the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." (*Id.* (citing *Lester v Chater*, 81 F.3d 821, 830 (9th Cir. 1991).)  Even when a treating physician's opinion is contradicted by another doctor, if the ALJ rejects the treating doctor's opinions, the ALJ must articulate "specific and legitimate reasons supported by substantial evidence in the record." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch*, 400 F.3d at 679. An ALJ can satisfy the "substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick* 157 F.3d at 725 (quotation marks omitted).  However, "[t]he ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.*

Incongruity between limitations listed by a physician, if lacking support in the patient's medical records, may provide a specific and legitimate reason for rejecting that physician's opinion of the patient's limitations. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, an ALJ may not rely on "selective citations to periodic improvements in [Plaintiff's] treatment record," *Edler v. Astrue*, 391 F. App'x 599, 601 (9th Cir. 2010) (finding that such improvements "are fully consistent" with bipolar disorder which is a disease that by its definition is episodic.)

**B. The ALJ's reasons for rejecting Dr. Ouano's opinion are not supported by substantial evidence.**

Here, the ALJ cited several reasons for discrediting Dr. Ouano's opinion, including because his "treating source assessment [asserting daily auditory hallucinations] is not consistent with treatment visit records [that note only isolated auditory hallucinations in April 2004, December 2004 and June 22, 2010, the last instance following a lapse in medication]." (A.R. 394-95.) In addition, the ALJ stated that "[w]hile treatment records [from Dr. Ouano and his clinic from 2005 to 2008] show some waxing and waning of symptoms, they also show periods of medication non-compliance." (A.R. 395; 265-86.) The ALJ also cites the overall records as showing "multiple instances of unremarkable mental status examinations and periods when [Plaintiff] was reportedly feeling and doing well." (*Id*; *see also* A.R. 754-56.) The ALJ further stated that medical records from November 22, 2011 "note good compliance [with medication] an even mood and no agitation or anxiety." (A.R. 398.) "May 30, 2012 records note only occasional mild auditory hallucinations and normal memory, mood and intellect." (*Id*.) The ALJ also pointed to an entry on October 2, 2012 in Dr. Ouano's treatment note indicating that "claimant was doing fine and denying auditory hallucinations." (*Id*.) The ALJ pointed out that the most recent treatment note reflects claimant's diagnosis was

13

changed to "schizoaffective disorder" and no auditory hallucinations or paranoia were reported.  (*Id*.)

In reviewing the ALJ's decision to deny benefits, this Court must ascertain whether there is substantial evidence on the record *as a whole* to support the denial. *Molina*, 674 F.3d at 1110 (emphasis added).  In this instance, the Court finds that the ALJ's reliance on selective portions of the record evidence was legally flawed because in the context of the overall record, the ALJ's bases for rejecting Dr. Ouano's opinion are not supported by substantial evidence. Instead of accounting for contradictory record evidence, the ALJ sidestepped Dr. Ouano's opinion, by selectively citing to temporary improvements in Plaintiff's functioning. *Buck v. Colvin*, 540 F. App'x 772, 773 (9th Cir. 2013).  However, as the Ninth Circuit has noted, "[g]iven the episodic nature of bipolar disorder, short-lived improvements in functioning are consistent with the diagnosis and cannot, by themselves, constitute substantial evidence to override treating source opinions that [Plaintiff] was significantly impaired." *Id*. citing *Agyeman v. I.N.S.*, 296 F.3d 871, 881 (9th Cir. 2002)); *see also Sorensen v. Barnhart*, 69 F. App'x 864, 866 (9th Cir. 2003). ("[T]he fact that a patient's symptoms may fluctuate to some degree does not compel the conclusion that the record is "contradictory" as to his disability or that he can consistently function better than the negative reports reflect.")  Indeed ,the Ninth Circuit has noted that it "is often the case, [for mental health patients that] his symptoms sometimes improved in response to, for example, a new medication, but they often worsened or plateaued later." *Id*.

An ALJ may not, as he did here, "manufacture[] a conflict with respect to the outcome of treatment by asserting that [Dr. Ouano's] records  showed 'consistent[]' improvement, when in fact they show consistent [bipolar and schizoaffective disorder] that responded only very briefly and partially to treatment." *Garrison*, 759

F.3d at 1012-13 (finding also that an ALJ errs in rejecting a medical opinion after criticizing it with only "boilerplate language that fails to offer a substantive basis for his conclusion.")

The ALJ also improperly discredited Dr. Ouano's medical opinion because of its alleged inconsistency with Plaintiff's reported daily activities (as described in treatment notes as well as Plaintiff's own testimony), which included the ability to live independently, prepare basic meals, take public transportation, manage his finances, have a girlfriend for some amount of time, visit with friends, and do the grocery shopping—mostly with assistance from his elderly mother who lived nearby. (A.R. 656.)  However, such activities are not inconsistent with disability. *See e.g., Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (grocery shopping, driving a car, or limited walking for exercise does not, in any way, detract from disability).

The Commissioner argues that "[i]f Plaintiff were utterly unable to function, as opined by Drs. Akins and Ouano, one would expect to see a commensurately intense level of treatment. That is not the case here. Certainly, there is no record of hospitalization for Plaintiff's mental symptoms." (Joint Stip. 29.)  The standard is not the utter inability to function or frequency of hospitalization, but rather Plaintiff's ability to do work. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (a claimant need not "vegetate in a dark room" or "be a total basket case" to be found unable to engage in substantial gainful activity).  Moreover, as the Commissioner concedes, Plaintiff was on a "treatment regimen of medication," that was largely effective in controlling his symptoms, but included an assortment of psychotropic drugs.  (A.R. 604.)

To the extent the ALJ suspected that Dr. Ouano was advocating on behalf of his patient by distorting the objective data and painting an inaccurate picture of Plaintiff's limitations (A.R. 777), the ALJ did not articulate substantial and legitimate reasons for any such suspicion, based on the record as a whole. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("[T]he Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits"). Medical professionals routinely opine about conditions and symptoms that may be impossible to quantify and describe in objective terms. The elusive "quest for 'objective evidence' becomes even more complicated and difficult in the context of mental disabilities," where test results, a history of medical procedures, or visual manifestations tend to be absent. *Sorensen*, 69 F. App'x at 866. "This is precisely the kind of information that a treating physician who sees a patient over a long period of time is in a better position to assess than an examining physician who sees a patient once and does not have the patient's medical records." *Id*.

Indeed, the "specific reasons requirement was intended to preclude bias in favor of the conclusions of doctors selected by the Secretary and to ensure that the Secretary gave appropriate 'consideration to the opinions of treating physicians who were presumably more familiar with the claimant than the Secretary's consultants." *Nudel v. Bowen*, 1989 U.S. App. LEXIS 22920 (9th Cir. June 8, 1989). Decision-makers are urged to give greater weight to treating physicians' opinions precisely because of their relationship with their patients. The "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician counsel against rejecting Dr. Ouano's opinion in this case. *Orn*, 495 F.3d at 631 citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii).

**C.  The ALJ also erred in crediting the dated opinions of Drs. Stone and Brawer.**

The ALJ's decision to discredit the more current opinions of the treating psychiatrist and rely primarily on opinions dating from 2004 and 2006 in a case involving a dynamic and progressive disease like a bipolar disorder is also not supported by substantial evidence in the record as a whole. *See e.g., March v. Comm'r of SSA*, 462 F. App'x 671, 673 (9th Cir. 2011) (finding the ALJ "reasonably found old reports to be of little value as they did not bear on [Plaintiff's] disability during the relevant period."); and *Flores v. Colvin*, 546 F. App'x 638, 640 (9th Cir. 2013) ("The ALJ properly rejected a portion of [a treating physician's] opinion because his opinion was ten years old, two more recent opinions by other treating physicians contained contradictory information, and the reviewing physician's opinion, on which the ALJ relied, was based on a review of the complete case record, which included medical reports from specialists who provided more detailed and comprehensive information than what was available to [the discredited treating physician].").

**D.  Remand to fully develop the record is necessary.**

Viewing the record as a whole under 42 U.S.C. § 405(g), Plaintiff's treatment records reflect a long and difficult history of depression, bipolar disorder, and poor social functioning.  (See A.R. 553-756.)  Plaintiff argues that if the ALJ properly credited the opinions of Drs. Akins and Ouano, a reversal and an order of benefits is warranted pursuant to the credit-as-true test.  (Joint Stip. 25.)

When a court determines that an ALJ improperly discounted testimony of a treating physician, the court may remand the action for calculation and payment of

benefits if three conditions are met:   (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting the evidence, whether from the claimant or a medical opinion; and (3) if the improperly evaluated evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d at 1020.  The Ninth Circuit has emphasized, however, that a "remand for an immediate award of benefits is appropriate [] only in 'rare circumstances." *Brown-Hunter v. Colvin*, 798 F.3d 749 (9th Cir. 2015).  This case does not present such circumstances.

Specifically, the Court finds that the first requirement for remanding for the award of benefits – a fully developed record – has not been met.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-02 (9th Cir. 2014) ("Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." (internal quotation marks and citation omitted)); *see also Brown-Hunter*, 798 F.3d at 749 (remanding for further proceedings where "crucial questions" remained).

The ALJ is responsible for fully developing the record, particularly in order to resolve conflicts in medical testimony or clarify ambiguities.  *Andrews*, 53 F.3d at 1039; *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)) ("An ALJ's duty to develop the record further is triggered ... when the record is inadequate to allow for proper evaluation of the evidence"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence…triggers the ALJ's duty to conduct an appropriate inquiry.")

Here, the ALJ's decision that Plaintiff was not disabled appears to be largely based on his finding (after rejecting the treating psychiatrist's opinions to the contrary) that Plaintiff did not have marked limitations in social interactions based on the fact that Plaintiff had a girlfriend, could live independently, visited with family, and got along "fair" with other people. (A.R. 393.) But questions remain whether Plaintiff is disabled in light of the inconsistencies in the medical record and in the absence of any RFC assessment based on the more current medical diagnoses of schizoaffective disorder. After reviewing the full medical record in this case, testifying medical expert, Dr. Akins opined, "*knowing that there are inconsistencies in the record and that sometimes a full clinical picture isn't always evident from the treatment records . . .* [i]n my humble opinion that is the case here and . . .this is not an individual who is likely to be able to be gainfully employed or to deal with every day common stress in work environments." (A.R. 778.) (emphasis added).

Dr. Akins identified specific inconsistencies in the record on which he based his opinion.  For example, he pointed out that Plaintiff's latest medical records, reflecting Plaintiff's depressive diagnosis and bipolar psychotic aspects, support a finding that Plaintiff "avoids social interaction with peer groups and [that] he has severe social anxiety and that he has a problem sustaining focused attention and that he's been unable to sustain productivity at the required level and has often been fired after a short period."  (A.R. 776.)  More significantly, Dr. Akins stated that although "technically the listing is not equaled based strictly on the underlying treatment data…I believe that there would be eligibility *if we do a functional capacity assessment.*" (A.R. 777-78.)(emphasis added).  Given that the record contained only the functional assessments performed by Drs. Stone and Brawer in 2004 and 2006, respectively, which the ALJ heavily relied on, Dr. Akins' statement triggered the ALJ's duty to fully develop the record by requiring an additional examination and assessment. (A.R. 262; 217.)

19

1    The ALJ could have issued a subpoena to Plaintiff's physicians, submitted

2    questions to his physicians, continued the hearing, or kept the record open after the

3    hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150.

4    Instead, the ALJ resolved the conflicts in medical testimony regarding Plaintiff's

5    social functioning, maintaining concentration and persistence of pace of work based

6    on an incomplete record, by crediting the dated opinions of Dr. Brawer and Stone

7    over those of Dr. Ouano and Akins.  (A.R. 393-97; 400.)   The ALJ's failure to fully

8    develop the record to resolve existing ambiguities, in order to make a valid benefits

9    determination, warrants a remand.

10

11    Accordingly, this matter should be remanded in order to further develop the

12    record with an updated RFC assessment and underlying examination by a medical

13    professional. *Garrison*, 759 F.3d at 1021; *see also Burrell v. Colvin*, 775 F.3d 1133,

14    1140-42 (9th Cir. 2014) (Courts must "remand for further proceedings when…an

15    evaluation of the record as a whole creates serious doubt that a claimant is, in fact,

16    disabled.").  In finding that remand for further proceedings is warranted, the Court is

17    mindful of the fact that Plaintiff first filed an application for SSI in October 2003.

18    (A.R. 387.)  He is approaching 60 years of age and has now waited nearly twelve

19    years for a proper adjudication of his application. Nonetheless, the burden of

20    establishing disability rests on Plaintiff, not the Commissioner, notwithstanding any

21    legal error by the ALJ in evaluating the record.  *See Valentine v. Comm'r of Soc. Sec.*,

22    575 F.3d 685, 689 (9th Cir. 2009) (claimant bears the burden of proof at steps one through

23    four of the sequential analysis).

24    //

25    //

26    //

27    //

28    //

1

## CONCLUSION

2

3     For the reasons stated above, IT IS ORDERED that the decision of the

4     Commissioner is REMANDED for further proceedings consistent with this Order.

5     Specifically, the Commissioner is directed to

6

7     (1) conduct a current residual function assessment;

8     (2) hold a hearing at which a medical advisor, who specializes in a relevant

9          field of medicine and has received an opportunity to review the record in

10         its entirety testifies regarding Plaintiff's limitations in social interaction;

11    (3) engage the assistance, if necessary, of a supplemental Vocational Expert

12         to evaluate potential relevant jobs in the national economy in light of

13         Plaintiff's updated RFC; and

14    (4) issue a decision that accords proper weight to all of the medical source

15         opinions of records, explicitly considers and provides legally sufficient

16         reasons for discounting the opinions of Plaintiff's treating psychiatrist and

17         any medical opinions.

18

19    IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of

20    this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and

21    for defendant.

22

23    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

24

25    DATED: October 19, 2015

26                                                    _Karen L. Stevenson_

27                                                    KAREN L. STEVENSON
                                                       UNITED STATES MAGISTRATE JUDGE

28